67 So.2d 619 (1953)
STATE ex rel. WEBER et ux.
v.
REGISTER, Judge et al.
Supreme Court of Florida. En Banc.
October 13, 1953.
W.P. Allen, Bartow, for petitioners.
Surles & Trawick, Lakeland, for respondents.
HOBSON, Justice.
A rule nisi in prohibition was heretofore issued by this Court on the petition of Don *620 L. Weber and wife, alleging that the Circuit Court in and for Polk County had no jurisdiction of their persons and was therefore without jurisdiction to proceed in a cause pending therein in which Weber and wife were named as defendants. The respondents have now answered, setting forth that under Section 47.16, Florida Statutes, F.S.A., the Secretary of State was authorized to accept service of process upon nonresidents doing business in the State of Florida and that service of process was had upon the petitioners, as authorized by the statute in question.
Section 47.16, supra, relates to nonresident persons or corporations who "operate, conduct, engage in, or carry on a business or business venture, in the State of Florida" and provides, in effect, for service upon such nonresidents by the service of process on the Secretary of State of Florida "in any action, suit or proceeding against them * * * arising out of any transaction or operation connected with or incidental to such business or business venture * * *."
It appears from the original complaint that the Webers had purchased an orange grove in this State and that they had conducted and operated the same as a business in Polk County, Florida. The Webers were nonresidents of the State of Florida. M.R. Driver, the plaintiff below and one of the respondents here, was licensed as a real estate broker and acted as such in Polk County. The Webers, while owning and operating the grove, listed it with Driver for sale and, it is alleged, agreed to pay him a commission of 5 per cent of the purchase price when Driver should produce a purchaser ready, willing and able to buy on the terms specified by the Webers. Driver claimed that he performed his part of the contract and was entitled to a commission of $2,000 upon an agreed purchase price of $40,000.
It is Driver's theory that the Webers were engaged in the business of owning and operating a citrus grove and that the listing of the property for sale with Driver was incidental to the operation of the business. Driver here contends that this was sufficient as a basis to obtain substituted personal service on the Webers, as authorized by Section 47.16, supra.
Although we do not agree that the listing of the grove property for sale was a "transaction or operation connected with or incidental to" the business in which petitioners were engaged in this State, to wit: the maintenance and operation of a citrus grove, we believe that the allegations of the complaint filed by Mr. Driver demonstrate clearly that the purchase of the property and the subsequent listing of the same for sale amounted to engaging in a "business venture" as contemplated by our statute.
There is a vast difference between the words "a business" and the words "business venture" as used in Section 47.16, supra. One may engage in a "business venture" without operating, conducting, engaging in or carrying on "a business." The listing of the grove for sale is proof of the fact that the purchase thereof was a "business venture." Moreover, the act of listing the property for sale amounted to a transaction "connected with or incidental to" the "business venture" which the Webers initiated when they acquired the grove.
Petitioners contend that if Section 47.16, F.S.A., is held to be applicable to, and the service under said section was properly had upon, then the act is unconstitutional in that it denies unto them due process and equal protection of the law. They insist that the business or business venture engaged in must, in order for Section 47.16, supra, to be constitutional, be a business or business venture involving hazard, health or similar matters which may be regulated under the police power of the State.
Respondents take the position that the statute under consideration applies to all nonresidents who engage in a business or business venture in this State; that the act affords due process and does not do violence to the privilege and immunities clause or the equal protection clause of the Federal Constitution, Amend. 14; art. 4, § 2.
*621 The Supreme Court of the United States in the case of Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565, recognized the rights of the several states to pass legislation of this type. We quote from that case:
"Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment or to designate such place that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgment rendered upon such service may not be binding upon the nonresidents both within and without the State." (Emphasis supplied.)
Respondents rely upon the foregoing announcement of the Supreme Court of the United States and further cite as authority for their position: Davidson v. Henry L. Doherty & Co., 214 Iowa 739, 241 N.W. 700, 91 A.L.R. 1308; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Sugg v. Hendrix, 5 Cir., 142 F.2d 740; Fielding v. Superior Court, etc., of San Francisco, 111 Cal. App.2d 490, 244 P.2d 968; International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Gillioz v. Kincannon, Judge, 213 Ark. 1010, 214 S.W.2d 212; Miller v. Swann, 176 Misc. 607, 28 N.Y.S.2d 247; Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165; State ex rel. Woods-Young Co. v. Tedder, 103 Fla. 1083, 138 So. 643; Condon v. Snipes, 205 Miss. 306, 38 So.2d 752, and other cases.
We are constrained to the view that petitioners engaged in a business venture within the State of Florida when they made a contract with respondent Driver in and by which they employed him as a real estate broker to find a person, or persons, ready, able and willing to purchase the citrus grove owned by petitioners in this State which contract is enforceable in this jurisdiction.
One of the major purposes of our constitutional provisions, F.S.A.Const. Declaration of Rights, § 12, which guarantees "due process" is to make certain that when a person is sued he has notice of the suit and an opportunity to defend. The Webers do not contend that they did not receive notice of the pending suit. In fact, it is patent that they did receive such notice and now have an opportunity to defend in the same territorial jurisdiction in which they purchased, operated and listed for sale, the grove.
Consequently, we conclude that Section 47.16, supra, is constitutional in that it acts alike upon all nonresidents who engage in business or a business venture in this State and it is not repugnant to the privileges and immunities clause or the equal protection clause of the Federal Constitution. Nor does the said statute violate the due process clause of either the Federal or State Constitution. As was stated in the case of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
We hold that service was and is valid and the rule in prohibition is hereby quashed and discharged.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.
THOMAS, J., agrees to discharge of writ of prohibition.
SEBRING and DREW, JJ., dissent.
*622 DREW, Justice (dissenting).
The statute under consideration in this case was adopted by the 1951 Legislature as Chapter 26657, was incorporated in the 1951 Florida Statutes as Section 47.16, and, omitting the formal parts, reads as follows:
"The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the State of Florida and who subsequently becomes a nonresident of this state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture, in the State of Florida, or to have an office or agency in the State of Florida, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of state of the State of Florida as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such persons and foreign corporations that any such process against them or either of them, which is so served shall be of the same legal force and validity as if served personally on such persons or foreign corporations. Service of such process shall be in accordance with and in the same manner as now provided for service of process upon nonresidents under the provision of § 47.30, Florida Statutes. Provided that if a foreign corporation has a resident agent in the State of Florida, service of process shall be had upon such resident agent as now provided by statute."
Statutes of this nature providing for substituted service are strictly construed, State ex rel. Palmer v. Gray, 92 Fla. 1123, 111 So. 242; Rorick v. Stilwell, 101 Fla. 4, 133 So. 609, and many other cases.
The Act uses the phrase: "Operate, conduct, engage in, or carry on a business or business venture," in defining the activity that a person must be engaged in to be subject to service of process under the Act. Unless the defendants in the court below are thus engaged, it is my view that the attempted service of process on them is void and the petitioner is entitled to a writ of prohibition absolute.
In Webster's New International Dictionary the word "operate" is defined as to "conduct"; the word "conduct" is defined as "manage" or "carry one"; "engage" is defined as "to embark in a business." The four words used in the statute connote the actual operation of a business or business venture. In selecting such words, the Legislature unquestionably meant to restrict the operation of the statute to those who accept the privilege of actually and actively conducting a business in this State, and who, in fact, do so.
The words "business" or "business venture," as used in the statute, I think mean the same thing, viz.: "business." The word "business" is defined by Webster, supra, among other things, as "one's rightful work or personal concern," "one's particular or regular work, occupation or employment," "a commercial or industrial enterprise." In 12 C.J.S., Business, page 765, the word is defined, in its narrower or restricted sense, as follows:
"In its narrower, or restricted, sense, also referred to as its commercial, legal, or trade sense, and in a legislative, or a popular and legal, sense, it has been said that the word `business,' as commonly under stood, or as a general proposition, and in common, or ordinary, parlance, or in a general sense, has a well defined meaning, not employed in any abstract sense but in a highly practical signification, as having reference to an occupation for livelihood or profit. It has been said that, while there are few words more current in our speech than the word `business;' and few that include a greater variety of subjects, yet there is none which, in popular speech, has *623 greater or more marked singleness in denotement; and that when one speaks of `business,' the mind naturally contemplates a commercial or industrial establishment or enterprise."
The phrase "doing business" is synonymous with "operating," "conducting," "engaging in" or "carrying on" a business and has been the subject of and defined in many decisions. 12 C.J.S., Business, page 761 et seq. The Restatement of the Law  Judgments, Section 22, page 107, defines the phrase as follows:
"b. What constitutes doing business. In the case of an individual, as in the case of partnerships or other unincorporated associations * * * and in the case of corporations * * *, doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."
This Court in The Texas Co. v. Amos, 77 Fla. 327, 81 So. 471, 472, quoted with approval the definition of "business" from the case of Goddard v. Chaffee, 2 Allen, Mass., 395, 79 Am.Dec. 796, as follows: "`Business' is a word of large significance, and denotes the employment or occupation in which a person is engaged to procure a living." And again, in the same case, we quoted with approval from Cuzner v. California Club, 155 Cal. 303, 100 P. 868, 20 L.R.A.,N.S., 1095: "`The term "business" as used in a law imposing a license tax on businesses, trades, professions, and callings, ordinarily means a business in the trade or commercial sense, one carried on with a view to profit or livelihood.'" In Crockin v. Boston Store of Ft. Myers, Inc., 137 Fla. 853, 188 So. 853, 855, we held, with reference to the words "transacting business" used in Section 4095, R.G.S., § 6026, C.G.L., § 613.01, F.S.A.:
"The legal principles applicable to this situation are found aptly stated in 14A Corpus Juris, page 1273, as follows:
"`In most jurisdictions it has been held that single or isolated transactions do not constitute doing business within the meaning of such statutes, although they are a part of the very business for which the corporation is organized to transact, if the action of the corporation in engaging therein indicates no purpose of continuity of conduct in that respect. Where, however, the single transaction is, or where the isolated transactions form a part of the regular business of the corporation, and the action of the corporation in engaging therein indicates a purpose to continue to engage within the State in the transaction of a part or all of its ordinary business, the foreign corporation is doing, transacting, carrying on, or engaging in business therein within the meaning of such statutes.'"
In the light of the foregoing authorities, the plain language used in the Act, the purpose sought to be accomplished and the history of legislation of this sort in other States, I think the conclusion is inescapable that the statute is limited in its scope to those individuals who engage in a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object or doing a single act for such purpose with the intention of thereby initiating a series of such acts.
So far as the Act relates to individuals, petitioners say that to be within the due process and equal protection clauses of the Constitution, it requires more than merely "engaging in business in this State." They argue that the business engaged in must be one involving hazard, health or similar business which could be prohibited under the police power of the State, such as, for example, the operation of vehicles over the highways. Sections 47.29 et seq., F.S. 1951, F.S.A.; State ex rel. Cochran v. Lewis, 118 Fla. 536, 159 So. 792, 99 A.L.R. 123, and cases there cited. The sale of securities to the public. Rorick v. Stilwell, 101 Fla. 4, 133 So. 609. They conclude that if the Act is held applicable to petitioners as "owners and operators" of a citrus grove  and if such is determined to be a business *624 within the meaning of the Statutes  the Act, as to them, is unconstitutional.
Respondent, on the other hand, says that the Act contains no such limitation and that the Act applies to all nonresidents who engage in business in the State, regardless of any prohibitions or permits required by Florida law. He says that the Act affords due process and violates neither the privilege and immunities clause nor the equal protection clause of the Federal Constitution. He argues that as far back as Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565, the Supreme Court of the United States recognized the rights of the States to pass this kind of legislation. Respondent also cites as authority for his view those cases cited in the majority opinion.
The Davidson v. Henry L. Doherty & Co. case cited in the majority opinion dealt with an Iowa statute very similar to 47.16, F.S. 1951, F.S.A., which we are discussing here. Doherty, a nonresident, established an office in Iowa and carried on his business of dealing in stocks. Suit was brought against him in connection with the sale of stock and substituted service was had upon him pursuant to said Iowa statute. The Supreme Court of that State said:
"What difference is there, under the due process clause of the Federal Constitution, between an action for damages for personal injury and an action for damages for fraud in the sale of stock? Both are strictly actions in personam and arise at common law. If jurisdiction can be obtained in one by substituted service on an agent, certainly it can be in the other. If such service is due process of law in one instance, it cannot be anything else in the other. There is no question of police power in either case. It is strictly and solely a question of `due process of law.'" [214 Iowa 739, 241 N.W. 704] (Emphasis supplied.)
Another Iowa case which dealt with substituted service upon the same defendant under the same statute is Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 554, 79 L.Ed. 1097. In that case the United States Supreme Court recognized that "Iowa treats the business of dealing in corporate securities as exceptional, and subjects it to special regulation," citing Davidson v. Henry L. Doherty & Co., supra.
In Sugg v. Hendrix, cited in the majority opinion, the 5th Circuit Court of Appeals upheld substituted service under Chapter 246, Laws of Mississippi, Acts of 1940, against a nonresident engaged in the construction of levees in Mississippi. Hess v. Pawloski, cited in the majority opinion, upheld the validity of the statute there involved providing for substituted service in suits arising out of the use of the highways of the State. Statutes similar to the one there under consideration are now universally upheld. See State ex rel. Cochran v. Lewis, supra.
Particularly pertinent to the question under discussion is the following quotation from International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 160, 90 L.Ed. 95, 161 A.L.R. 1057:
"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there.
"* * * It is enough that appellant has established such contacts with the state that the particular form of substituted service adopted there gives reasonable assurance that the notice will be actual. * * * Nor can we say that the mailing of the notice of suit to appellant by registered mail *625 at its home office was not reasonably calculated to apprise appellant of the suit." (Emphasis supplied.)
Act 347 of the Acts of Arkansas, 1947, is strikingly like Section 47.16, F.S. 1951, F.S.A. The Arkansas Act provides:
"Any non-resident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and Laws of this State as to doing business herein, who shall do any business or perform any character of work or service in this State shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the Secretary of State, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such non-resident, or his, its or their agent, servant or employee. Service of such process shall be made by serving a copy of the process on the said Secretary of State, and such service shall be sufficient service upon the said non-resident of the State of Arkansas, provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant at his last known address, and the defendant's written return receipt, or the affidavit of the plaintiff, or his attorney, of compliance herewith are appended to the writ or process and entered in the office of the Clerk of the court wherein said cause is brought. The court in which the action is pending may order such continuance as may be necessary to afford the defendant, or defendants, reasonable opportunity to defend the action."
In disposing of an attack on this Act the Supreme Court of that State, in Gillioz v. Kincannon, 213 Ark. 1010, 214 S.W.2d 212, 216, said that the Act
"* * * does not violate any constitutional right of such nonresident since it provides for a form of service, the effect of which is to give the defendant actual notice. It does not violate the due process clause since it requires a legal basis for jurisdiction, that is the nonresident, defendant, must have done some business, work or service within the State. It does no violence to the privileges and immunities clause because it does not discriminate between non-residents but places them upon the same basis as residents." (Emphasis added.)
The decision in Condon v. Snipes, 205 Miss. 306, 38 So.2d 752, cited by the lower court in its order upholding the statute, is highly pertinent and persuasive. As in the Arkansas statute, the language of the Mississippi Act, referred to in the discussion in Sugg v. Hendrix, cited in the majority opinion, was very similar to the Florida Act. The nonresident defendants in that case were engaged in the termite eradication business. Substituted service was obtained under the statute. The Mississippi Supreme Court, as had the Circuit Court of Appeals in Sugg v. Hendrix, supra, upheld the statute and pointed out that under that statute (as under the Florida statute) residents and nonresidents are treated alike and that the State had the right to make such requirements of those nonresidents who engage in business in that State, pursuant to its laws and regulations, and that in so doing they were placed in exactly the same category as residents of Mississippi.
While there appears to be a definite trend of the modern decisions to break away from the concept that for a business to fall within the terms of Acts of the kind under consideration, it must be the type of business that is subject to regulation under the police power of the State  if, in fact there ever was such a basic concept  I do not believe it necessary to decide that question in this case because the business of the ownership and cultivation of citrus groves in Florida is definitely affected with a public interest and is subject to regulation under the police power. In almost every session of the Florida Legislature a great deal of time is devoted by the lawmakers to the *626 regulation of this industry, which the Court knows is one of Florida's largest and most important. An example of such legislation may be found in Chapter 601, F.S. 1951, F.S.A.
A close study of this statute, 47.16, F.S. 1951, F.S.A., convinces me that it, and its companion statute, Section 47.30, F.S. 1951, F.S.A., act upon resident and nonresident alike and that it is not repugnant to the privileges and immunities clause or the equal protection clause of the Federal Constitution if its operation is restricted to those engaged in business in this State as above defined. It assures a defendant reasonable notice and opportunity to defend his rights in a legal forum and therefore does not violate the due process clause of either the Federal or State Constitution. I am impressed by the substance of these things  not the form they assume. It has always been the rule that due process consisted of only reasonable notice and a fair opportunity to defend.
It is my view that if the petitioners had been engaged in the business of buying and selling real estate or citrus groves, the transaction or conduct, which is the very basis of the action, would have been incidental to such business or business venture. The sale of a business cannot be incidental to the business  at least I feel confident that the Act never contemplated that result. If the respondents had failed to pay for the fertilizer for the grove, or for spraying or for help in connection with its operation, or if their truck or trucks had injured another, or if a picker or other employee had been injured in the operation thereof, such things would have been within the phrase "arising out of any transaction or operation connected with or incidental to such business or business venture". It is the operation of the business that brings it within the orbit of the statute  not the sale or disposition of it. In the operation of the business the State furnishes the nonresident owner roads to reach his business and over which to transport his products or wares, it provides protection to his property, furnishes courts to protect its boundaries and to collect his debts, as well as many other things. The mere sale of a business or a liability arising out of an offer to do so  simply is not conducting a business within the meaning of the Act as I construe it  unless, of course, the defendant is engaged in that business.
It is my view that to extend the terms of the Act to the point that is done in the majority opinion, subjects substantially every nonresident of Florida to the jurisdiction of the Florida Courts in any action which might arise against them in this State. If that is the effect, I feel the Act offends Section 2 of Article IV of the Constitution of the United States which provides that citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States. It is my view, as stated by the late Judge Curtis Waller in Sugg v. Hendrix, cited in the majority opinion, in speaking of the similar Mississippi Act, "If the regulation be one for the protection of the health, safety, and welfare of those within its borders, rather than a mere attempt to extend the jurisdiction of its courts over citizens beyond its borders, the state is not without power to legislate to that end." [142 F.2d 743] (Emphasis added.)
For the reasons herein stated, I think the lower court should be prohibited from further proceedings in this cause.
SEBRING, J., agrees to conclusion.