125 So.2d 321 (1960)
Harry TOFFEL, Trustee, Appellant,
v.
Harold P. BAUGHER and Ruth D. Baugher, husband and wife, Kenneth L. Baugher and Kathryn L. Baugher, husband and wife, Appellees.
No. 1717.
District Court of Appeal of Florida. Second District.
December 23, 1960.
Edward A. Stern, Pallot, Silver, Pallot, Stern & Mintz, Miami, for appellant.
Lewis E. Purvis, Sumter Leitner, Arcadia, for appellees.
ALLEN, Chief Judge.
The appellant, as plaintiff in the lower court, filed a complaint for damages alleging that the appellee-defendants or their agents had misrepresented certain facts regarding a large tract of land which defendants had sold to plaintiff. The plaintiff attempted service by substituted service over the defendants, who are residents of Illinois, under the provisions of sec. 47.16, Florida Statutes, F.S.A. The defendants moved to dismiss the complaint on the ground of lack of jurisdiction, insufficiency of process, and insufficiency of service of process. The lower court granted the motion to dismiss with leave to amend which the plaintiff did. The defendants again moved to dismiss the complaint on the same grounds as their first motion plus the ground that the cause of action was "insufficient to come within the provisions of sec. 47.16, of the Florida Statutes [F.S.A.]." The lower court then entered an order providing in part:
"Ordered, and Adjudged that the Plaintiff's Amended Complaint in the above styled cause be, and the same is hereby dismissed based on grounds #1 and #4 of Motion.
"Done and Ordered in Chambers in the City of Arcadia, DeSoto County, Florida, this 31st day of December, A.D. 1959."
The plaintiff has appealed from this order.
The applicability of sec. 47.16, Florida Statutes, F.S.A., is the sole issue presented by the appellant. The defendants inherited 1,685 acres of land, located in DeSoto *322 County, upon the death of their father. The defendants are residents of Illinois. During 1956, Lewis Purvis obtained an option to purchase the land which was subsequently assigned to the plaintiff. The option to purchase was prepared in Florida but executed by the defendants in Illinois. The plaintiff subsequently exercised the option and a deed was prepared in Florida and signed and executed by the defendants in Illinois. The plaintiff then executed a purchase money mortgage in Florida and delivered it to the defendants in Illinois.
The plaintiff filed a suit for rescission and cancellation of the contract with the defendants. The trial court dismissed the complaint and the plaintiff appealed to this court. This court, in 111 So.2d 290, affirmed but without prejudice to the defendants' right to bring an action for damages. The plaintiff then filed the instant action.
The appellant states the question involved as follows:
"Does the sale by a non-resident owner, through Florida agents, and on terms negotiated within the State of Florida, of a tract of Florida real estate, and the taking back of a recorded purchase money mortgage and installment note designating a Florida bank as collection agent, constitute a `business or business venture' within the meaning and scope of sec. 47.16 of Florida Statutes [F.S.A.]?"
The Supreme Court of Florida in the case of State ex rel. Weber v. Register, Fla. 1953, 67 So.2d 619, 620, held that the act of out of state owners of a Florida orange grove in listing the grove with a real estate broker in Florida for sale was not a "transaction or operation connected with or incidental to" such owners' business in Florida of maintaining and operating of orange grove, within statute authorizing service upon nonresidents by service of process on Florida Secretary of State in any action, suit or proceeding against nonresidents arising out of any transaction or operation connected with or incidental to Florida business or business venture, but that nonresidents' purchase of grove and listing of it for sale amounted to engaging in a business venture within statute, and that service could be effected on such nonresident owners by service upon the Secretary of State.
The plaintiff, in State ex rel. Weber v. Register, supra, alleged that the nonresidents, Weber and his wife, had purchased an orange grove in Florida; that they had conducted and operated the same as a business in Polk County; that while owning and operating it, they listed it with a real estate broker for sale; that the real estate agent had found a purchaser and the Webers had refused to sell; and that therefore the agent was entitled to a commission. The Court, in its opinion, said:
"There is a vast difference between the words `a business' and the words `business venture' as used in Section 47.16, supra. One may engage in a `business venture' without operating, conducting, engaging in or carrying on `a business.' The listing of the grove for sale is proof of the fact that the purchase thereof was a `business venture.' Moreover, the act of listing the property for sale amounted to a transaction `connected with or incidental to' the `business venture' which the Webers initiated when they acquired the grove."
Two of the Supreme Court Justices dissented in the Weber case.
Subsequently, the Supreme Court, in the case of Wm. E. Strasser Const. Corp. v. Linn, Fla. 1957, 97 So.2d 458, 459, held that where nonresident defendants acquired land in Florida and entered into a contract for the construction of an apartment building thereon with the alleged intent of renting it to tenants for production of income for the benefit of defendants, defendants, under such circumstances, would be deemed to have engaged in a "business venture" in the state, sufficient to subject them to *323 jurisdiction of a state court obtained by substituted service on the Secretary of State, in lieu of personal service.
Mr. Justice Thornal, in writing the opinion of the Court, said:
"Section 47.16, supra, relates to nonresidents who `operate, conduct, engage in, or carry on a business or business venture, in the state * * *.' The statute further provides in effect that service of process may be obtained upon such non-residents by the service of process on the Secretary of State of Florida * * *. The cited statute provides a method of substituted service of process in lieu of personal service. It is therefore necessary that one invoking the provisions of the statute carry the burden of presenting a situation that clearly justifies the application of the Act. Statutes of this nature are strictly construed and parties seeking to invoke them are required to bring themselves clearly within the provisions of the Act in order to render the substituted service of process effective against the defendants. Rorick v. Stilwell, 101 Fla. 4, 133 So. 609.
"We have also held that each case of this kind must be resolved on the basis of the facts revealed by the record in the particular case. While certain general principles may be said to prevail the application of these principles will be governed by the factual situation presented by a particular record. Mason v. Mason Products Company, Fla. 1953, 67 So.2d 762."
In the case of Matthews v. Matthews, Fla.App. 1960, 122 So.2d 571, 573, this court held in a suit for an accounting where the plaintiff attempted to obtain service of process on a nonresident defendant by serving the Secretary of State, that allegations that the cause of action arose out of activities of the defendant in doing "business" in Florida were sufficient to bring plaintiff within the statute authorizing substituted service.
The Court, in its opinion, said:
"* * * In essence plaintiff alleged defendant Matthews was doing business in Florida during the times in question in that while a resident of Florida she was managing the affairs of Alliance Investment Corporation and Soft Water Laundry, Inc.; that she acquired corporate, other personal property and real estate while a Florida resident and that her business activities in Florida included the purchase, sale, leasing, renting, and managing real estate and personal property and that this proceeding arose out of a transaction or transactions connected with or incidental to such business, namely the alleged fraudulent acquisition of such properties by defendant."
The appellants contend that the non-resident appellees were represented by their agents in Florida and that the plaintiff was represented during the negotiations by an agent, Milton M. Mendelsohn; that the agent went upon and looked over the property and that the attorney examined the abstract of title; that a purchase money mortgage and note were executed in Florida; that the DeSoto National Bank, Arcadia, Florida was designated as agent for collection of the same, and that the mortgage was duly recorded in the public records of DeSoto County, Florida, by the defendants. There was testimony taken before the court by the appellants of their agent, Mendelsohn, which they relied upon to show a business venture in the State of Florida by the absentee landowners.
The appellees also introduced the testimony of two witnesses from which the lower court could have determined a factual situation much at variance with that of the witness, Mendelsohn.
The two witnesses alleged in the complaint to be the agents of the appellees in Florida were both attorneys residing in Arcadia, Florida and representing the appellees in this case. Mr. Leitner, page 2, et seq., appellees' appendix stated that he *324 saw Mendelsohn, who discussed with him the desirability of obtaining more property to subdivide  he told Mendelsohn that a man by the name of Baugher owned a large tract of land north of Mrs. Chadwick's tract and that if Mendelsohn was interested in the property he would see what he could do toward helping him get it; that he could not personally contact Baugher because of some personal difficulties but that Lewis Purvis at one time represented Baugher and that he would see him and see if he could get an option on the property. He then contacted Mr. Purvis and Mr. Purvis said that Baugher had died some years before and the property was now owned by Baugher's two sons, but that he would see what he could do toward getting an option. Subsequently, Purvis informed Leitner that he had obtained from the Baughers an option to buy the property and had made the option run in Leitner's name and Purvis' name; that Leitner took the option to Mendelsohn and told him if he exercised the same that Leitner and Purvis would expect a consideration. Mendelsohn said he would take it up with his associates and let Leitner hear from him. Nothing further was heard from Mendelsohn and the option time ran out.
Subsequently, Mendelsohn asked Leitner to see Mr. Purvis and get another option, which resulted in another option being obtained, but the Baughers had advanced their price to where they wanted $292,000 for the property, which was thought to be about $175 per acre. Leitner took this last option to Mendelsohn who told him that he and his associates wanted the property but they would not pay one penny more than was called for in the option. Leitner told Purvis about it and Purvis said he was willing to assign the option to Mendelsohn and his associates without any consideration, that he could get a substantial fee from the Baughers as he would probably represent them in closing the deal, and that he would associate Leitner with him in the closing.
The option was assigned by Purvis and Leitner to Mendelsohn and he was told if he wanted the option and assignment he could have them for nothing and that they would look to their fee for the closing of the deal if the Baughers wanted them to close it, and that they knew nothing about the property or where it was located.
Subsequently, Mr. Purvis told Leitner that the Baughers had informed him that one of the associates of Mendelsohn, Harry Toffel, the plaintiff in this suit, had elected to purchase the property under the option and that the Baughers had hired him to close out the sale and he wanted Leitner to become associated with him in this closing. Leitner further stated that neither he nor Purvis got any money for assigning the option to Toffel, and that neither he nor Purvis were the agents of the Baughers.
Mr. Purvis' testimony corroborated the statements of Mr. Leitner and he also stated that he did not represent the Baughers at that time, though in the past he had represented them; that Leitner told him that he was in contact with some developers who were interested in acquiring lands anywhere along Peace River, and that if Purvis could get an option from the Baughers on their land, he would sell the option and they would split equally any profit they might make in disposing of the option; that Purvis contacted the appellees and their attorney in Illinois and obtained the option from them in the names of Sumter Leitner and himself to purchase the lands involved in this litigation, which the Baughers had inherited from their father.
Purvis further stated that all negotiations with the Baughers were carried on by mail or by telephone between him and the defendants or their attorney in the State of Illinois, where they resided; that the options granted were prepared by him in the State of Florida and were by them executed in the State of Illinois; that after the plaintiff exercised his right to purchase under the option, the deed of conveyance from the defendants to the plaintiff was prepared in *325 Florida and mailed to the defendants in Illinois and by them signed and acknowledged in the State of Illinois; that in dealing with these options he did not represent the Baughers, that they were represented by their attorney, Mr. A.D. Van Meter, Jr., an attorney practicing in Springfield, Illinois; that the options obtained by Sumter Leitner and Purvis were a personal matter with them and not as an attorney for the defendants and with the full knowledge of everybody concerned that Leitner and Purvis intended to make a profit on the sale of the option in the event they did not themselves exercise the option to purchase, that he, Purvis, received nothing from either the Baughers, the defendants, or Toffel, the plaintiff, for the option that was assigned to Harry Toffel; that after the exercise of the option by the plaintiff, he attempted to purchase the timber located upon the land, but that this effort to purchase the timber did not occur until after the timber belonged to Harry Toffel, subject only to the purchase money mortgage.
The circuit judge considered the testimony of the witnesses for both the appellant and the appellees in determining the motion to quash the service or dismiss the complaint in this case. As is usual in this case, he had the right to decide the facts testified to before him and determine which witnesses he would believe and which not to believe. It is apparent that the lower court determined from the testimony of the two attorneys, Purvis and Leitner, that the appellees would not be deemed to have been engaged in business or a business venture in the State of Florida sufficient to subject them to jurisdiction of a state court within the purview of Section 47.16, Florida Statutes, F.S.A.
The appellees inherited the property in Florida and did not purchase it and list it for resale, which distinguishes this case from the purview of the majority opinion of State ex rel. Weber v. Register, supra. Neither can we say that there was sufficient "minimum contacts" by the appellees within the State of Florida to bring this case under Section 47.16, Florida Statutes, F.S.A.
The lower court is affirmed.
KANNER and SHANNON, JJ., concur.