128 So.2d 186 (1961)
John T. OXLEY and his wife, Mary K. Oxley, Appellants,
v.
M.J. ZMISTOWSKI, and his wife, Doris L. Zmistowski; Zmistowski Construction Co., a Florida corporation, and Dormanine Holding Corporation, a Florida corporation, Appellees.
No. 2038.
District Court of Appeal of Florida. Second District.
January 27, 1961.
Kirk Sullivan, Fulton, Sullivan & Burns, West Palm Beach, for appellants.
Angus J. Campbell, Warwick, Paul & Warwick, West Palm Beach, for appellees.
ALLEN, Chief Judge.
This appeal questions the sufficiency of process and service of process upon the appellants, defendants below. The appellees, as plaintiffs in the lower court, filed a complaint for declaratory decree in regard to their rights under an option contract whereby the appellant-defendants were to sell to plaintiffs certain land.
Several summonses were issued and two different services were made on the Secretary *187 of State due to the fact that the original complaint contained no allegations as to the residency of the parties. An amendment, however, was filed which corrected this irregularity. While there were certain irregularities in the services, we think that there was a sufficient service from the facts of this case.
The defendants state the following question:
"Did the court acquire jurisdiction over the persons of the defendants under the provisions of sections 47.16 and 47.30, Florida Statutes, 1959?"
The lower court held in the affirmative and we shall affirm the lower court in so holding.
We are confronted in this case with the problem of deciding whether or not the complaint of the plaintiffs sets forth facts that would entitle the plaintiffs to serve nonresident defendants through service upon the Secretary of State, according to Florida Statutes, § 47.16 and § 47.30, F.S.A., on the basis that the defendants at the time of the accrual of the plaintiffs' cause of action were engaged in a business venture in Florida.
The University of Miami Law Review, Vol. XIII, No. 2, page 205, comments upon the problem involved in this cause as follows:
"The problem must be examined in the light of its historical development. The Supreme Court in 1877, in the case of Pennoyer v. Neff [95 U.S. 714, 24 L.Ed. 565], formulated the rule that absent a voluntary appearance or consent to be served, the due process clause of the fourteenth amendment required personal service of a nonresident individual defendant within the forum to give a state jurisdiction to render as in personam judgment. Thus was enunciated the requirement of `presence' for individuals which later was applied to foreign corporations. The failure of the Court to clearly limit the requirement of physical presence to cases where the nonresident had no other contacts with the state of the forum led many legislatures to enact substituted service statutes to circumvent the supposed `due process' requirement of the decision. Subsequent decisions of the Court engrafted many limitations upon the `presence' test, culminating in its abandonment in International Shoe Co. v. [State of] Washington [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95]. Having abandoned `presence' as essential to `due process' in acquiring jurisdiction in actions in personam, the more nebulous test of `minimum contacts' was advanced. `Minimum contact' was reached in McGee v. International Life Ins. Co. [355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223], decided by the Court in 1957. In the words of Justice Black, `It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state.' (Emphasis added.) `Due process' is thus the key which opens the jurisdictional lock of a state as to a nonresident defendant."
The plaintiffs filed a complaint for declaratory decree in which they allege that the plaintiffs, M.J. Zmistowski and his wife, Doris L. Zmistowski, are the officers and sole owners of the Zmistowski Construction Company and the Dormanine Holding Corporation; that the Dormanine Holding Corporation executed a warranty deed which was filed with the Clerk of the Circuit Court of Palm Beach County, which purported to convey certain property to the defendants, John T. Oxley and his wife, Mary K. Oxley, for a consideration of $250,000; that about three days thereafter the defendant John T. Oxley and the plaintiff Zmistowski Construction Company, entered into an option agreement whereby it was agreed that the Zmistowski Construction Company, for the consideration of $500,000, could purchase the described property mentioned above, but said option to be *188 exercisable only between the dates of February 15, 1958, and March 15, 1958; that at the time above mentioned the value of the property exceeded $750,000; and that the plaintiff, Dormanine Holding Corporation, had no intention of conveying the same in fee for $250,000 but intended that the property was to be security for a loan of $250,000 advanced by the defendants John T. Oxley and wife, Mary K. Oxley. The complaint also averred that the deed and option agreement together constituted a usurious transaction in that it was corruptly agreed between the plaintiffs and the defendant John T. Oxley that the sum advanced by the defendant Oxley to the plaintiff Dormanine Holding Corporation was a loan secured by the property referred to and that the interest on the transaction exceeded 100%; that during the period of time the title was purportedly in the defendants, the plaintiff Dormanine Holding Corporation agreed to pay all real property taxes, all special assessments on the property and all attorneys' fees involved and all costs and stamps involved in conveying the property from the defendant Oxley to the Zmistowski Construction Company and to pay off encumbrances existing on the property at the time of its purported conveyance to the defendant; and that the plaintiff Zmistowski Construction Company exercised the option in the agreement attached as Exhibit "A" and paid to the defendant John T. Oxley sums in excess of $350,000.
The plaintiffs prayed that the deed and option agreement be declared void; that the defendants be compelled to deliver up the deeds to be cancelled and that the same be discharged of record; that the defendants be enjoined from conveying any property described in the deed; and that the plaintiffs be entitled to such remedies and forfeitures as provided by Chapter 687, Florida Statutes, F.S.A.
Exhibit "A" of the complaint, the option agreement, shows that the agreement was entered into the 2nd day of August, 1957, between John T. Oxley and Zmistowski Construction Company, a Florida corporation. The agreement further provided for $6,810 to be paid as follows: $10 at or before the execution of the option, $1,800 on or before September 15, 1957, and $5,000 on or before the 15th of November, 1957. The option gave the right to purchase lands in Palm Beach County, which option could be exercisable only between the dates of February 15, 1958, and March 15, 1958, inclusive. Determination date of the option was to be midnight of March 15, 1958. The option further provided that should the party of the second part (Zmistowski Construction Company) elect to exercise the option, it should notify the party of the first part (Oxley) addressing the parties of the first part in care of McCoy and Love, Attorneys, Civic Center Building, Lake Worth, Florida, and within a period of ten days thereafter pay to Oxley the sum of $500,000. The sum of $6,810 so paid on the account thereof was not to be a part of the consideration nor was the second party to have credit for the payment thereof upon the purchase price of such premises. The option contract further provided that the defendant Oxley would convey by a special warranty deed to the Zmistowski Construction Company lands described in the option agreement for the consideration of $500,000 and the assumption by the second party of the mortgage thereinafter described. The $500,000 was to be paid as follows: $100,000 on or before September 15, 1958; $100,000 on or before March 15, 1959; $100,000 on or before September 15, 1959; $100,000 on or before March 15, 1960; and $100,000 on or before July 15, 1960, and upon the payment of each $100,000 the defendant Oxley would convey 40 acres of the land described therein on certain terms and conditions.
The option further provided that prior to the annual installment to be paid under the contract, Oxley agreed to convey in 10 acre tracts certain other property upon the payment of $24,155 for each 10 acre tract dealing. The option also provided that the Zmistowski Construction Company *189 agreed to pay all taxes assessed against the premises for the year 1958 and subsequent years. The option also provided that each of the deeds conveying tracts of land in parcels #1 and #2 should contain an exclusive reservation in favor of Green's Fuel of Florida Corporation, a Florida corporation, providing for an easement on the rear of all lots which shall be subsequently platted for the installation of tanks and gas mains by Green's Fuel of Florida Corporation, or its assigns, and that there should be covenants and conditions running with the land, and that Green's Fuel of Florida Corporation should have the exclusive and sole easement to supply gas by tanks and gas mains, and block type systems in the area and lots to be platted.
The Florida Supreme Court, in State ex rel. Weber v. Register, Fla. 1953, 67 So.2d 619, held that where a nonresident purchased an orange grove and subsequently listed it with a broker for sale, that while the listing of the property was not part of the business of operating an orange grove, the purchase of the grove and the listing of it for sale was a business venture within the meaning of the Florida statute.
The Supreme Court also held in the case of Wm. E. Strasser Const. Corp. v. Linn, Fla. 1957, 97 So.2d 458, that where nonresident defendants acquired land in Florida and entered into a contract for the construction of an apartment building thereon with the alleged intent of renting it to tenants for production of income for the benefit of defendants, that the defendants, under such circumstances, would be deemed to have been engaged in a business venture in the state, sufficient to subject them to jurisdiction of a state court obtained by substituted service on the Secretary of State, in lieu of personal service.
This court, in an opinion filed December 23, 1960, in the case of Toffel v. Baugher et al., 125 So.2d 321, held that where the defendants had inherited property in Florida and subsequently sold the property in Florida, that under the facts in that case, process could not be served on the Secretary of State as it was not such a business venture as to bring it within the purview of the statute.
The instant case was argued before this court after the opinion of the court in Toffel v. Baugher et al., supra, was written though not released, and the facts and law involved in the Toffel case were re-examined. While we affirmed the circuit judge in the Toffel case in holding, under the facts in that case, that there was not such a business venture as to bring it within the purview of the statute, we concluded that in the instant case there was sufficient and substantial connection with Florida, and sufficient acts to be performed within this state, to warrant substituted service as contemplated by the statute. McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.
The U.S. Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, held that due process requires that the defendant, if he was not present within the forum, should have certain minimum contacts with it in order for substituted service to come within the purview of the due process clause of the Federal Constitution.
In McGee v. International Life Ins. Co., supra, it was held that the due process clause did not preclude a California court from entering a judgment binding on the respondent if the suit was based on a contract which had substantial connection with California where the contact was delivered in California, the premiums were mailed from there, and the insured was a resident of that state when he died.
The District Court of Appeal of Florida, Third District, in Continental Copper & Steel Industries v. E.C. "Red" Cornelius, Inc., Fla.App. 1958, 104 So.2d 40, 41, held that a nonresident corporation which manufactured electrical cable, with its factories and principal offices outside the State of Florida, could be sued in Florida where it had sold electrical cable to a Florida *190 corporation, which, in turn, had sold the property to a Florida electrical contractor who had buried the cable in the ground and used it in connection with an installation being performed under subcontract for the United States Navy by the electrical contractor, and such cable was defective, that the Florida court would have jurisdiction of the plaintiff and could be served under the provisions of § 47.16, Florida Statutes, F.S.A., since the foreign corporation was engaged in a business venture in the State thereby subjecting itself to substituted service of process. The court in an opinion by Judge Horton said:
"On the first question as to appellant's amenability to suit in Florida under § 47.16, supra, the trial judge was called upon to decide as a question of fact whether the proofs offered were sufficient to establish that appellant engaged in a business venture in the state of Florida within the meaning of the statute. The record discloses proofs sufficient to support his conclusions. See State ex rel. Guardian Credit Indem. Corp. v. Harrison, Fla. 1954, 74 So.2d 371."
The Florida Supreme Court in the Guardian Credit Indemnity Corporation case, cited in the above quote, in an opinion by Mr. Justice Hobson, held that where a foreign corporation which operated a collection service and had qualified to do business in Florida, furnished its brokers with instructions and supplies for use in presenting its company's credit indemnity plan to prospective clients, and where the effective performance of the contract between the corporation and the client could take place only in Florida, the corporation was engaged in a business or business venture within the state of Florida and was amenable to substituted service of process.
We are of the opinion that under the facts set up in the complaint above detailed and the decisions of the Florida and federal courts, the lower court committed no error in holding that the defendants below, appellants here, were engaged in a business venture in the State of Florida.
Affirmed.
SHANNON, J., and SANDLER, HARRY, Associate Judge, concur.