160 So.2d 733 (1964)
FLORIDA INVESTMENT ENTERPRISES, INC., a Florida corporation, and Ralph Hayes and Grace Hayes, Appellants,
v.
The KENTUCKY COMPANY, INC., a Florida corporation, Appellee.
No. E-187.
District Court of Appeal of Florida. First District.
February 13, 1964.
*734 Conklin, Borns & Wilson and William W. Judge, Daytona Beach, for appellant.
Walter A. Shelley, Daytona Beach, for appellee.
RAWLS, Judge.
The defendants Florida Investment Enterprises, Inc., Ralph Hayes and Grace Hayes appeal from a default judgment, a final judgment and an order denying defendants' motion to vacate and set aside default and final judgments.
Plaintiff, Kentucky Company, brought this action on January 17, 1963, to recover damages for an alleged breach of a lease which was signed by the three defendants. Personal service of process was made upon Ralph Hayes and upon the corporate defendant. Substituted service under Section 47.16, Florida Statutes, F.S.A., was attempted for nonresident defendant Grace Hayes. Attorneys for the resident defendants filed with the Clerk a Notice of Taking Depositions of seven people on February 13, 1963. This notice bears the signature of Robert L. Wilson and indicates W.W. Judge as co-counsel. The taking of these depositions was delayed to accommodate plaintiff's counsel, and the conclusion of the transcript of one deposition contains the following colloquy:
"BY MR. WILSON  We had scheduled for this morning Thomas C. Simpson, J.L. Townsend, Jr. and his wife, and for this afternoon John Petty and Priscilla Petty, his wife, and due to previous unavoidable commitment, Mr. Shelley voluntarily canceled these depositions. He has agreed that we will try to set these back up at the mutual convenience of counsel.
"BY MR. SHELLEY  I agree to that statement and will be glad to attend any resetting of these depositions by Mr. Wilson.
"BY MR. WILSON  The only thing, I don't want to have to file a bunch of dilatory motions to stall it, but I want to get John Petty's and Priscilla Petty's testimony before I file responsive pleadings.
"BY MR. SHELLEY  I will submit those individuals at the convenience of Mr. Wilson and the Reporter.
"BY MR. WILSON  And I won't have to file an Answer before we take the depositions?
"BY MR. SHELLEY  Sir?
"BY MR. WILSON  I won't have to file an Answer before we take the depositions?
"BY MR. SHELLEY  I wouldn't relax the Rules on that, but I'll submit them before time.
"THEREUPON the hearing was ADJOURNED."
On March 4, 1963, Robert L. Wilson wrote a letter to plaintiff's attorney advising *735 that his trial schedule would be terminated at the end of the week, at which time he would be able to continue the depositions and would thereafter file responsive pleadings to the complaint. This letter was answered four days later by plaintiff's attorney who advised Mr. Wilson that he had not agreed to the extention of time beyond the return date, February 20, 1963, and that on February 26, 1963 default and final judgments (in the sum of $42,140.03) had been entered. On March 19, 1963, Mr. Wilson filed a motion to vacate. This motion was denied and defendants appealed.
We are confronted with two essential points: 1. Did the trial court abuse its discretion in refusing to set aside the default and final judgments due to mistake, inadvertence, surprise or excusable neglect? 2. Is Grace Hayes operating, conducting, engaging in or carrying on a business venture in this State as contemplated by the statute authorizing substituted service upon nonresidents?
As to the first point appellants rely upon the following facts to show reversible error:
1. They relied upon the automatic referral system contained in the Rules for Internal Government of the Circuit Court of the Seventh Judicial Circuit of Florida, pursuant to which the complaint in this cause was referred to division "D" presided over by the Honorable Horace D. Riegle, whereas the default and final judgments were entered by retired Judge George W. Jackson.
2. Their attorney, Mr. Wilson, understood from the quoted colloquy that he would not be required to file dilatory pleas in order to gain time necessary for the completion of the pending two trials on his schedule but that the attorneys would "work things out."
3. Mr. Wilson, by the motion, informed the trial judge that he began preparation on February 14, 1963 for two previously scheduled jury trials, the case of Arthur E. Cleveland v. R.H. Wright, Inc. tried on February 25 and 26 in Volusia County and June Henderson v. Broward County Board of Public Instruction tried on March 6 and 7 in Cocoa, Brevard County, Florida.
4. Mr. Wilson in the spirit of cooperation postponed the taking of some of the depositions, but plaintiff's attorney did not extend him the courtesy of notifying him by letter or phone call prior to taking the default judgment and did not inform the trial judge that defendants had retained counsel. At this point we note the record reveals that the attorneys maintain their offices in the same town, and that plaintiff's attorney admitted he did not inform Judge Jackson that defendants had retained counsel.
5. Defendants have a meritorious defense as is shown by the deposition of Martin Petty (attached to the motion). The corporate defendant has a meritorious defense independent from those of Ralph Hayes, and such defenses include satisfaction, a corporate accounting, setoff, misappropriation of funds by the plaintiff corporation against the individual Ralph Hayes and a counterclaim for moneys due and owing for work and labor.
The general rule in cases such as this is that relief may be granted within the sound discretion of the trial court upon a showing of the existence of a meritorious defense and a legal excuse for failure to comply with the rules. This court has reviewed the deposition filed in the record and concludes that the order of the trial court denying defendants' motion to vacate was not based upon the absence of a meritorious defense.
The history of the statutory provision regulating the setting aside of default judgments has been reviewed in detail in North Shore Hospital, Inc. v. Barber[1] and need not be reiterated here. Pertinent here, however, is the Supreme Court's pronouncement *736 that the repeal of the statute and the reversion to the common law likewise abrogated prior decisions holding that under the statute a showing of "gross abuse" of the trial court's discretion was a prerequisite to reversal of a ruling upon a motion to vacate. Instead, that opinion emphasized the liberalizing of the rules of procedure toward the achievement of substantial justice and quoted with approval Waterson v. Seat and Crawford,[2] to wit:
"`Whether a default should be opened, must depend on all the facts and circumstances connected with the case. If the party be guilty of gross negligence, the default will not be opened.' [Emphasis supplied.]
"The court also stated that `* * * it is the tendency of the courts of the present age to stand less upon strict rules of practice than formerly, and to keep the door a long time open to a defendant who seems to be honestly striving to get in what he believes to be a good defense.' Those lines were penned in 1863."
Subsequent to the occurrence of the facts that gave rise to the North Shore Hospital case and subsequent to the entry of the order reveiewed by this court in Thomason v. Jernigan,[3] the liberalization of the rules was further advanced by the adoption of Rule 1.38(b), Florida Rules of Civil Procedure, 30 F.S.A., which is substantially the same as Federal Rule 60. This rule provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect * *." [Emphasis supplied.]
The numerous cases construing the Federal Rule have also leaned toward liberality. One of the earlier and leading cases[4] on the subject elaborated on the "sound discretion" of the trial court by holding that such discretion is not absolute or capricious but must be applied to give effect to the will of the law, not that of the judge, toward the objective that legal procedure becomes the vehicle for determination of the issues upon their merits instead of upon refinements of procedure, though limited to the extent that litigants and counsel are not allowed with impunity to disregard the processes of the court.
The Federal cases have repeatedly asserted that the purpose of the rule is to assure a party claiming in good faith to have a good and substantial defense to an action, an opportunity to be heard, and the trial courts should exercise the power vested in them liberally in order to achieve this result. Accordingly, these cases give strong consideration to whether the original cause has been litigated and have often granted relief for inadvertence of counsel in failing to file an answer under factual situations not warranting relief for inadvertence occurring after the trial of the cause. For example, Wolfsohn v. Raab,[5] held that an attorney's mistake in calculation of time for filing answer is mistake or inadvertence under the rule, and when coupled with a showing of a meritorious defense constitutes grounds for granting relief. Weller v. Socony Vacuum Oil Co. of New York[6] held that failure of a clerk in the employ of plaintiff's attorney to serve bill of particulars is mistake or inadvertence sufficient to vacate the order dismissing the case for lack of prosecution. United States, for use of Kantor Bros., Inc. v. Mutual Construction Corp.[7] held *737 that failure of an attorney to file an answer due to the fact that he was then engaged in prosecuting a case as a special assistant to the United States Attorney General is excusable neglect.
Although it is well settled that default judgments may not be set aside for a party guilty of gross negligence, the precise circumstances constituting excusable neglect, mistake or inadvertence is not well defined but depends upon all the factors in the case. As previously stated greater leniency is granted in cases not decided upon the merits. Facts commonly recited in opinions on the subject, and presumably considered to some degree, are the size of the judgment, the length of time after being in default before judgment is applied for and entered, and the diligence of the defaulting party in moving to set aside judgment. Where the only basis for excusable neglect is that counsel had "other business outside the state", the urgency, continuity, and distraction of such business and the length of time required to be out of the state are material factors for consideration where it is also shown that counsel ignored the case for six months although at least part of this time he was in the state engaged in the normal practice of law and had consulted with his client upon other matters during this period.[8]
Of particular interest, although not decisive of the instant case, is Dalminter, Inc. v. Jessie Edwards, Inc.,[9] where the defendant received the summons which required the defendant to serve upon plaintiff's attorney an answer within 20 days. Defendant without employing an attorney, wrote within the required period a letter to plaintiff's attorney stating that there must be some error, due to the fact that the damage complained of allegedly occurred prior to the date the corporate defendant was chartered. Defendant heard nothing more and did nothing more in the matter until writ of execution was served upon it. The defense attorney who was then employed promptly moved to set aside the judgment. The court took the view that the defendant did what the summons requested, and in doing so asserted a defense which, if proven correct, would absolve it of the complaint; that the plaintiff's attorney having been served with an answer had the duty to inform the court; that the letter, although not filed with the clerk of the court, constituted an appearance sufficient to require notice of application for judgment so that the defendant could then take steps to protect its interest; and, therefore, it having been shown that a meritorious defense existed and that failure to file an answer was due to mistake or excusable neglect, motion to set aside default judgment should be granted.
The record reveals the following facts in the instant case which should be given consideration: 1. There was no adjudication of the issues on the merits. 2. Defendants were in default only seven days when default and final judgments were entered. 3. The judgment is for a considerable sum. 4. Defendants had employed attorneys who had already been active in the case, but the trial judge was not so advised at the time of entering default judgment. 5. Although all attorneys involved practiced law in the same city, plaintiff's attorney did not notify defense counsel of his application for default and final judgments. 6. There may have been some element of surprise due to the disposition of the case by a judge other than the one to whom the complaint was assigned. 7. There was apparently a genuine misunderstanding between the attorneys the total substance of which is not fully revealed by the transcribed colloquy. Plaintiff's attorney recalled that he had definitely not agreed to an extension of time but he understood the depositions would be completed the following Tuesday which was prior to *738 the return date. Defendant's attorney understood that he would not be required to file dilatory pleas but the two would "work things out." The colloquy itself concluded with a statement by plaintiff's attorney which might be construed as an acceptance to take the initiative in rescheduling the depositions. 8. Defense counsel was absorbed in final preparations for two impending jury trials, and 9. When defense counsel learned of the judgments, he acted promptly in moving to set aside same.
These facts constitute excusable neglect when viewed in the light of the purpose for the rule  that is, that the discretion of the court in setting aside judgments should be liberally exercised toward the result that parties claiming a substantial defense to the action may have an opportunity to have the cause determined upon its merits rather than upon procedural technicalities.
Our decision on this point applies only to the corporate defendant and defendant Ralph Hayes. There has not been submitted in this appeal any evidence of any excusable neglect or inadvertence on the part of Grace Hayes. There is no indication that she had employed an attorney or took any steps to defend the action prior to the filing of the motion to vacate. Her claim that the judgments should be set aside is based upon the contention that they are void as to her since she is a nonresident, not engaged in business in Florida, having signed the lease only as a surety, and cannot be served pursuant to Section 47.16, Florida Statutes, F.S.A. That section provides for substituted service upon the Secretary of State for nonresidents who operate, conduct, engage in, or carry on a business or business venture in the state when the action arises out of any transaction or operation connected with such business or business venture.
The lease agreement names as lessees Florida Investment Enterprises, Inc., a Florida corporation; Ralph Hayes of Daytona Beach, Florida; and Grace Hayes of Harrison County, Kentucky. The agreement was signed by Ralph Hayes for the corporation, by Ralph Hayes individually and by Grace Hayes individually. Martin Petty, the controlling stockholder and actual head of the plaintiff corporation, deposed that the CanCan Motel (the subject of the lease agreement) was actually operated by Ralph Hayes. All of Petty's dealings were with Ralph Hayes, but Hayes's previous business endeavors had been so unsuccessful that Petty would not deal with him without the security of his mother's signature. In his deposition Petty stated: "I thought we were going to lease it to Ralph and Grace Hayes * * *. When we got to Mr. Simpson's office, he had the lease drawn with Florida Investment, and he said to let Ralph and her sign it personally, it would be just the same and would save drawing up another lease * *. We figured * * * he and his mother had signed as surety on the lease, if Florida Investment didn't pay it, they'd have to * * *." The deposition disclosed that Grace Hayes executed the lease in Daytona Beach, Florida. Both parties being in agreement that under the terms of the lease Grace Hayes was a surety, the question presented is whether the act of signing an instrument as a surety constitutes operating, conducting, engaging in, or carrying on a business venture in the state so as to permit substituted service upon a nonresident.
The Florida statute providing for substituted service of process in lieu of personal service must be strictly construed and the burden of presenting a situation that clearly justifies its application is upon the one invoking its provisions.[10]
*739 In the instant case Grace Hayes offers no evidence to support the allegations contained in her motion other than the sworn statement of Martin Petty as noted above. The Kentucky Company submitted no evidence on this issue, so the facts are not in conflict.
Cases in this state dealing with individual nonresident defendants have held that the sale of a homestead in Florida by persons then living in Florida but who immediately thereafter moved to Georgia is not engaging in a business venture in Florida;[11] the lending of money in Florida at a usurious rate of interest and accepting a conveyance of land within the State as security therefor is engaging in a business venture;[12] the selling of real estate in Florida inherited by a nonresident is not a business venture where the nonresident had no agent or lawyer in Florida acting in his behalf;[13] and the purchase of real property in Florida and the subsequent listing of same for sale with a Florida real estate broker amounted to engaging in a business venture.[14] Where an individual nonresident defendant while a resident of Florida managed the affairs of two Florida corporations and engaged in purchasing, selling, leasing, renting and managing real estate and where the proceeding arose out of such transactions, the Second District Court of Appeal found:[15]
"Although certain of the individual acts of the defendant as related to each separate property involved may or may not be classified as a business venture when considered collectively her activities show a general course of employment and conduct of carrying on her own personal business activity in this state for her own pecuniary benefit or livelihood. * * *
"Quite obviously some of the activities alleged on the part of the defendant are business ventures within the meaning as previously given by Florida courts. * * *" [Emphasis supplied.]
Likewise, the Supreme Court speaking through Mr. Justice Thornal in William E. Strasser Construction Corp. v. Linn[16] held that nonresident individuals were engaged in a "business venture" when it was alleged that they, through their authorized New York agent, entered into a contract with the plaintiff construction company to build a three-unit apartment house on their Dade County lot for the ultimate purpose of providing income for the nonresident defendants. The agent was further authorized to acquire furniture, lease the units, collect the rentals and use the courts to enforce or to collect damages resulting from any breach of contract made on their behalf. The Supreme Court in its decision mentioned the "elements of a business venture," without listing same, other than to state:
"* * * While at first glance the mere execution of the construction contract might appear in and of itself to be lacking in elements of a business venture, a more mature and thorough consideration of the allegations of the complaint suggest that the Linns had invested in a piece of Florida real estate and, by the agreement, contemplated investing further capital in a purely business enterprise. If the building were completed and the owners then proceeded to collect the rents and enjoy the profits of the Florida *740 operation, we believe it could hardly be contended with success that they were not engaging in a business venture in this state. We think it equally clear that by the purchase of the land and the execution of the construction agreement the Linns were initiating the first substantial steps toward setting themselves up in a business venture in this state." [Emphasis supplied.]
That opinion also quoted (apparently with approval) from Restatement of the Law, "Judgments", Sec. 22, p. 107, to wit:
"In the case of an individual * * * doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."
Mrs. Hayes insists that she only executed the lease as a surety and since she did not contemplate deriving any pecuniary benefit from the operation of the motel, that she does not come within the provisions of the subject statute. We cannot go along with such contention. Mrs. Hayes journeyed to Daytona Beach, executed the lease as one of the lessees, and by this instrument committed herself to the accomplishment of many affirmative acts which amounted to operating, conducting, engaging, or carrying on a business or business venture in this state. Furthermore, it is clearly evident from the record that the instant motel business would not be in existence had not Mrs. Hayes executed the lease. We conclude that the instant suit is a result of a business venture in this state in which Mrs. Hayes was engaged, and that the substituted service of process is binding upon her; therefore, judgment as to Mrs. Hayes is affirmed.
Affirmed in part, reversed in part.
STURGIS, C.J., and WIGGINTON, J., concur.
NOTES
[1] North Shore Hospital, Inc. v. Barber, 143 So.2d 849, 853 (Fla. 1962).
[2] Waterson v. Seat and Crawford, 10 Fla. 326 (1863).
[3] Thomason v. Jernigan, 146 So.2d 905 (Fla.App.1st, 1962).
[4] Ledwith v. Storkan, 2 F.R.D. 539 (D.C. Neb. 1942).
[5] Wolfsohn v. Raab, 11 F.R.D. 254 (D.C. Pa. 1951).
[6] Weller v. Socony Vacuum Oil Co. of N.Y., 2 F.R.D. 158 (D.C.N.Y. 1941).
[7] United States, for use of Kantor Bros., Inc. v. Mutual Construction Corp., 3 F.R.D. 227 (D.C.Pa. 1943).
[8] Ledwith v. Storkan, supra.
[9] Dalminter, Inc. v. Jessie Edwards, Inc., 27 F.R.D. 491 (D.C.Texas, 1961).
[10] Faweett Publications, Inc. v. Rand, 144 So.2d 512 (Fla.App.3d, 1962), cert. denied, Fla., 155 So.2d 618; Toffel v. Bangher, 125 So.2d 321 (Fla.App.2d, 1960).
[11] Hayes v. Greenwald, 149 So.2d 586 (Fla.App.3d, 1963).
[12] Oxley v. Zmistowski, 128 So.2d 186 (Fla.App.2d, 1961).
[13] Toffel v. Baugher, 125 So.2d 321 (Fla. App.2d, 1960).
[14] State ex rel. Weber v. Register, 67 So.2d 619 (Fla. 1953).
[15] Matthews v. Matthews, 122 So.2d 571, 573 (Fla.App.2d, 1960).
[16] Wm. E. Strasser Construction Corp. v. Linn, 97 So.2d 458, 460 (Fla. 1957).