PEARSON, Judge.
This interlocutory appeal is by the defendant, Washington Star Syndicate, Inc., from an order denying defendant’s motion to dismiss upon the ground of lack of jurisdiction over that corporate defendant. The plaintiff, Don Wright, by his complaint sought a declaration of his rights and injunctive relief pursuant to a contract between Wright and the Syndicate whereby Wright would produce, and the Syndicate would distribute, newspaper cartoons. Service of process was attempted pursuant to § 48.181, Fla.Stat. This section provides for service on non-residents engaging in business in Florida. The sole point presented on appeal is whether the facts before the trial court by pleadings, stipulation and affidavits were sufficient to support the trial court’s order, which denied defendant’s motion to dismiss and thereby found that the Syndicate was doing business, or was engaged in a business venture, in the State of Florida.
The stipulation entered into the record is as follows:
“1. Place of Incorporation. The defendant, Washington Star Syndicate, Inc. is a New York corporation. It is not and never has been incorporated in Florida nor registered to do business in Florida. No resident agent for service of process has been designated in Florida.
“2. Office. The defendant maintains an office in New York, N. Y. and does not maintain an office, post office box or telephone listing in Florida. None of defendant’s officers or directors reside in Florida and none of the books or records are kept in Florida.
“3. Property. The defendant owns no real or personal property in Florida. The defendant has leased no real or personal property in Florida other than rental of a car incidental to a business trip.
“4. Employees. No officer or employee of the Washington Star Syndicate, Inc. is now or ever has been assigned to work permanently in Florida. Harry Elmlark and Christopher Pearson have each made one business trip to Florida in the past five years for the *446 Washington Star Syndicate, Inc. The last trip was by Pearson who spent one week in early 1974.
“5. ■Government Contract. The defendant is not licensed by the State of Florida or any of its political subdivisions and has not paid taxes to any government in Florida other than those sales or use taxes in connection with travel and lodging expenses incurred on business trips.
“6. Sales of Features. The defendant does sell one or more of its various features to Florida newspapers on a regular basis and these papers include Miami Herald, Miami News, Ft. Lauder-dale News, Tallahassee Democrat, Palm Beach Post, Florida Times-Union (Jacksonville), Daytona Beach Morning Journal, The Sun-Sentinal (Orlando), The Sentinal-Star (Orlando), The Pensacola News-Journal, Naples Daily News, The Tampa Tribune, Holmes County Advertiser, The Florida Flambeau (Florida State University), University of South Florida Newspaper, The Gainesville Sun, Boca Raton News, and St. Petersburg Independent.
“7. Transmittal of Features. The features sold to the newspapers described above are transmitted to the newspapers by mail or by a wire service.
“8. Billing for Features. The defendant mails monthly bills for its features to the Florida newspapers listed in paragraph 6 and receives payment from these Florida newspapers, usually in the form of checks mailed to the defendant’s New York offices.
“9. Transactions Between the Parties. The contract which is the subject of this case was signed by Don Wright in Florida and by the defendant’s President in New York. Transactions in connection with this contract were carried out by phone and mail between New York and Florida. All the work done by Don Wright under the contract has been done in Florida.
“10. Attached Exhibits. The attached ‘tear sheets’ illustrate the nature of the Washington Star Syndicate, Inc.’s features sold to Florida newspapers. The Washington Star Syndicate, Inc. does not control the editorial policy of any of these papers nor are the papers required to run these articles. They do pay for the features run.
“11. Affidavits. The parties also agree that the facts contained in the affidavits submitted by the parties (including the sworn complaint) may be considered by the Court.”
We think that it should be added to the stipulated facts that the record shows from the pleadings and the affidavits that the contract was entered into in the State of Florida and that the product distributed by the Syndicate, which is a glossy print of a cartoon, was produced in the State of Florida. It further appears from the exhibits attached to the complaint that the defendant Syndicate considered itself a joint venturer in the State of Florida for the purpose of producing the glossy prints of the cartoons which were thereafter sent from Miami. It further appears that the Syndicate agreed to pay a 50% portion of the cost of producing the prints from the cartoons.
We think that this cause is governed by the holding of the Supreme Court of Florida in State ex rel. Weber v. Register, Fla. 1953, 67 So.2d 619 and applied in Florida Investment Enterprises, Inc. v. Kentucky Company, Fla.App.1964, 160 So.2d 733; Oxley v. Zmistowski, Fla.App. 1961, 128 So.2d 186; Lomas & Nettleton Financial Corp. v. All Coverage Underwriters, Inc., Fla.App. 1967, 200 So.2d 564. In addition, the finding of a trial judge that the defendant was engaged in business or in a business venture in the State of Florida is supported by the fact that the collection of the material to be distributed was done in Florida, payments for the material were *447 made in Florida and also distribution was actually made in this state by the defendant itself to Florida newspapers. Compare Continental Copper & Steel Industries v. E. C. “Red” Cornelius, Inc., Fla.App.1958, 104 So.2d 40, and Oxley v. Zmistowski, Fla.App.1961, 128 So.2d 186.
Affirmed.