251 So.2d 33 (1971)
Joseph O. HORACE, a/k/a Joe O. Horace, a/k/a J. Horace, a/k/a J.O. Horace, Appellant,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY OF FORT LAUDERDALE, a National Banking Association, and Travel Coach, Inc., a Florida Corporation, Appellees.
No. 71-164.
District Court of Appeal of Florida, Fourth District.
August 3, 1971.
R.T. Shankweiler, of Patterson, Maloney & Frazier, Fort Lauderdale, for appellant.
Thomas B. Mimms, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for Appellee-American Nat. Bank and Trust Co.
*34 MAGER, Judge.
This is an interlocutory appeal from an order denying defendant Horace's motion to dismiss the complaint of American National Bank and Trust Company of Fort Lauderdale, plaintiff below. The plaintiff filed its complaint against Travel Coach, Inc., a Florida corporation, Horace and one Robertson, seeking to recover the sum of $25,174.49 alleged to be due, owing and unpaid. Service of process on Horace, a nonresident, was made pursuant to Section 48.181(1), Florida Statutes, F.S.A.[1] This section relates to nonresident persons or corporations who "operate, conduct, engage in, or carry on a business or business venture, in the state" and provides, in effect, for service upon such nonresidents by the service of process on the Secretary of State of Florida "in any action or proceeding against them * * * arising out of any transaction or operation connected with or incidental to the business or business venture * * *".
Defendant contends that he was not engaged in a business or a business venture within the meaning of Section 48.181, so that service of process thereunder was insufficient to confer jurisdiction upon the trial court. Horace's motion to dismiss was predicated upon the aforementioned grounds. Neither Travel Coach, Inc. nor Robertson joined in Horace's motion nor are they parties to this appeal.
In Wm. E. Strasser Construction Corp. v. Linn, Fla. 1957, 97 So.2d 458, the Supreme Court held that each case of this type must be resolved on the basis of the facts revealed by the record in the particular case; while general principles may be said to prevail, the application of these principles will be governed by the factual situation presented by the particular record.
The record reflects that on July 30, 1968, the plaintiff approved a credit line of $50,000.00 to Travel Coach, Inc., a Florida corporation doing business in this state. The obligations of Travel Coach, Inc., were initially guaranteed by individuals not involved in the case sub judice. On December 6, 1968, a $10,000.00 loan was made to Travel Coach, Inc., which note was also guaranteed by individuals not involved herein. On January 31, 1969, Horace, Robertson, and one Crabtree personally appeared at the plaintiff bank seeking permission to substitute their signatures for the present and future obligations of Travel Coach.[2] At that time the bank was informed that Horace, Robertson and Crabtree were purchasing 60 per cent of the common stock of Travel Coach, Inc. On the same date, a commercial checking account *35 was opened for Travel Coach with the plaintiff bank by Horace, Robertson and three others who signed the signature card opening the Travel Coach account. The signatures of any two of the five were necessary in order to draw a check upon the Travel Coach account. Plaintiff alleged that based upon financial statements submitted by Horace and the other named individuals the bank approved them as guarantors; and on February 3, 1969, Horace, Crabtree and Robertson delivered a signed guaranty agreement to the plaintiff bank, whereby the guarantors obligated themselves to the plaintiff on "all sums of money that may now or may at any time hereafter be owing to" the bank by Travel Coach, Inc. It appears that the guaranty agreement was both executed and delivered in Florida inasmuch as the defendant in his motion to dismiss asserted "the only act which the defendant performed in the State of Florida in an individual capacity was the signing of said guaranty * * *".
Travel Coach, Inc. executed various and sundry promissory notes in favor of the plaintiff bank. In the period from January 1969 to September 1970 the bank honored checks against the Travel Coach account with the result that Travel Coach's account became overdrawn to the extent of $25,174.49. Plaintiff alleges that company checks were paid against insufficient funds solely because of the personal guaranties of Horace and others.
Horace contends that his only act in Florida was to sign a guaranty and under the holding in Odell v. Signer, Fla.App. 1964, 169 So.2d 851, such act was not sufficient to constitute "carrying on or engaging in a business or business venture" within the meaning of F.S. Section 48.161, F.S.A. We do not agree.
In Odell, defendants, residents of Ohio, were officers in an Ohio corporation engaged in business activities in Florida. As a result of these business activities a dispute arose and plaintiff instituted a lawsuit against the individual defendants and the corporation for whom the defendants were acting. The litigation was ultimately resolved by a settlement which resulted in the defendants and the defendant corporation executing a promissory note. When plaintiff sought to obtain judgment on the note against the individual defendants and the corporation, the individual defendants who were served pursuant to F.S. Section 47.16, F.S.A., contended that their signing of the note in settlement of the litigation did not constitute doing business within the contemplation of the substituted service statute.[3] In rejecting defendants' contentions the court initially observed:
"First we hold that the signing of a note and the defense of a law suit are not sufficient acts, in and of themselves, to constitute carrying on or engaging in a business or business venture. This determination does not resolve our problem because the above acts are the only such acts appellees admit having individually performed in this state. All other transactions, they claim, were performed in their capacity as corporate officers." (Emphasis added.)
The ultimate disposition turned on the particular facts of the case. Although the court recognized that the isolated act of signing a note (which was the only act performed by the defendants in their individual capacity) would not in itself be sufficient to constitute engaging in a business or a business venture, the court concluded that since the corporation which they represented was doing business in the state the acts of the corporation were chargeable to the individuals for the purpose of determining the existence of jurisdiction. As can be seen the court found that there was more involved than the mere signing of a note. In reaching this conclusion the court observed in part:
"* * * we refuse to compartmentalize our concept of jurisdiction, in that, we *36 will not consider the individual's act of signing the note in a vacuum. We must consider the circumstances surrounding the signing of this note by them. * * *"
When we consider the circumstances surrounding the execution of the guaranty in the case sub judice we likewise find something more than just a mere signing of the guaranty. The rationale of Odell is applicable to the case sub judice so that the acts of Travel Coach can be imputed to Horace for the purpose of determining the existence of jurisdiction. Apart from Odell it is our view that the individual acts of the defendant in and of themselves irrespective of the activities of Travel Coach established the requisite minimum contacts so as to permit the maintenance of the suit below.
In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court in moving away from the rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), established a new test:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" State ex rel. Weber v. Register, Fla. 1953, 67 So.2d 619, at 621. (Emphasis added.)
The minimum contacts necessary to give rise to doing business or engaging in a business venture may consist of a single act with the intention of thereby initiating a series of such acts. Strasser Construction Corp. v. Linn, supra.
Three criteria have emerged from the decisions of the Supreme Court in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), for determining the present outer limits of an in personam jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; second, the cause of action must derive from the defendant's activities there; third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. (See Southern Machine Co. v. Mohasco Industries, Inc., 6 Cir.1968, 401 F.2d 374.) Courts of other states have sustained the exercise of personal jurisdiction over the defendant who, as a party to a contract, has had some connections with the forum state or should have anticipated that his conduct would have sufficient effect in that state. Clinic Masters Inc. v. McCollar, D.C.Colo. 1957, 269 F. Supp. 395; National Bank of America at Salina v. Calhoun, D.C.Kan. 1966, 253 F. Supp. 346; Hamilton National Bank of Chattanooga v. Russell, D.C.E.D.Tenn. 1966, 261 F. Supp. 145; Cox v. District Court of City and County of Denver, 1966, 160 Colo. 437, 417 P.2d 792; Melfi v. Goodman, 1962, 69 N.M. 488, 368 P.2d 582; Griffiths & Sprague S. Co. v. Bayly, Martin & Fay, Inc., 1967, 71 Wash.2d 679, 430 P.2d 600. See also the following annotations: 27 A.L.R.3d 697; 23 A.L.R.3d 551; and 20 A.L.R.3d 1201.
Applying these criteria to the instant case we find: First, defendant (and others) personally appeared at the bank for the purpose of substituting their signatures for the present and future obligations of Travel Coach, Inc. and to become guarantors of all such obligations. At the same time defendant opened a commercial checking account with the plaintiff bank, on behalf of Travel Coach, Inc., and became one of several signators on checks to be drawn against the Travel Coach account. The defendant executed and delivered to the bank a guaranty agreement under the terms of which it undertook to become obligated to the plaintiff for any and all sums *37 of money owed by Travel Coach to the bank. By opening a checking account for Travel Coach and becoming a guarantor for its financial obligations defendant purposefully availed himself of the privilege of transacting business in this state. Admittedly, Travel Coach was a Florida corporation doing business in Florida. As a consequence of these acts the plaintiff extended credit to Travel Coach, Inc., in furtherance of its business activities in Florida.
Second, the instant cause of action arose out of and is directly related to the activities of defendant Horace. Plaintiff's cause of action seeks to recover amounts alleged to be overdrawn in the account of Travel Coach, Inc., whose obligations defendant Horace undertook to assume and which obligations the plaintiff seeks to enforce against Horace. Plaintiff's extension of credit was made on the strength of such guaranty.
Third, the obligations created by the defendant and the business operations set into motion by such obligations have created the necessary substantial connection with the forum state so as to make the exercise of jurisdiction reasonable and consonant with the due process tenets of fair play and substantial justice. Defendant's activities were obviously designed to insure Travel Coach's financial ability to continue to engage in business in Florida and defendant could reasonably anticipate that such activities would give rise to significant continuing effects in this state. Moreover, the state has a legitimate interest in protecting financial transactions and business activities carried on within its borders. Consistent herewith, the state has a manifest interest in preserving the obligations of contracts as well as resolving suits resulting from such contracts and transactions. Clearly, the state has a continuing interest in securing reasonable business expectations; similarly, the defendant has a continuing interest in the activities of Travel Coach in Florida and should not complain if along with the profits from such activities he must also accept process resulting from such activities.
The individual acts of the defendant, either when considered alone or coupled with the activities of Travel Coach, create sufficient minimum contacts so as to make the defendant amenable to process consistent with traditional notions of justice and fair play.
Affirmed.
WALDEN and OWEN, JJ., concur.
NOTES
[1] "48.181 Service on nonresident engaging in business in state. 

(1) The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the secretary of state of the state as their agent on whom all process in any action of proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations."
[2] In determining the necessary minimum contacts a defendant need not be physically present within the territory of the forum to subject him to a judgment in personam where his activities outside the forum state result in consequences within the state. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). See discussion, infra.
[3] Provisions formerly contained in F.S. Section 47.16, F.S.A., are now embodied in F.S. Section 48.181, F.S.A.