ROLLINS NURSING HOME, INC. and
Calvin D. ROLLINS *v.*
M & LC/STILLWELL MORTGAGE CO.

CA 79-136                          593 S.W 2d 1

Opinion delivered December 17, 1979
(In Banc)
[Supplemental opinion on denial of
Rehearing February 11, 1980]

*Keith G. Rhodes* and *Marvin H. Robertson,* for appellants.

*Hale, Hendricks, Thurman & Capps,* by: *David L. Hale,* for appellee.

JOHN A. FOGLEMAN, Justice. This action is a proceeding brought by M & LC/Stillwell Mortgage Company to register a default judgment obtained by it against Rollins Nursing Home, Inc. and Calvin D. Rollins in the Circuit Court of Broward County, Florida on October 24, 1977. Appellants resisted the registration of the judgment upon the ground that the Florida court had no jurisdiction over them under the Florida long-arm statute. The trial court held that appellants were properly served with summons issued out of the Florida court because they were engaged in a business venture in the sense of the Florida statute, and permitted registration of the judgment. We disagree and reverse.

There is no dispute about the facts. Calvin D. Rollins was an officer of Rollins Nursing Home, Inc. He went to Ft. Lauderdale, Florida in December, 1976, to make an application for a loan from appellees in order to buy three nursing homes in Arkansas. These nursing homes were owned by Arkansas residents. He met with Martin Small and filled out the application for the loan, signing it as agent for the corporation. When Small told Rollins he would have to pay a finder's fee of 1%, an appraisal fee of $2,500 and $4,500 for some item, the nature of which Rollins did not recall, Rollins wrote and delivered the checks on which the Florida suit was based. The checks were not honored because Rollins stopped payment on them three days later, after he had returned to Arkansas. Rollins said that the reason for stopping payment was that the owners of the nursing homes his company was planning to buy backed out on the sale and had advised Small that they were not selling to appellants. Rollins said that no appraisal was ever made because it was not needed.

The applicable Florida statute is Fla. Stat. Ann. § 48.193 (1977). The pertinent portion of that statute reads:

(1)  Any person, whether or not a citizen or resident of this State, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:

(a)  Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency in this state.

After hearing the evidence, the trial judge held that trying to borrow $1,200,000 was a business venture and not an isolated occurrence, that more than one act was done in furtherance of the attempt, and that Rollins apparently had some conversations beforehand, went to Florida, executed the checks and a contract binding himself, individually and as guarantor, if the obligation was consummated. Since the trial court held these acts sufficient as a basis of jurisdiction under the Florida long-arm statute, the Florida judgment was sustained under the full faith and credit clause of the United States Constitution.

We disagree with the trial court's determination that the transaction in Florida constituted a business venture in Florida under Florida law. The Florida long-arm statute is strictly construed by the courts of Florida. *Lyster* v. *Round,* 276 So. 2d 186 (Fla. App., 1973); *Chase Manhattan Bank* v. *Banco Del Atlantico,* 343 So. 2d 936 (Fla. App., 1977); *American Baseball Cap, Inc.* v. *Duzinski,* 308 So. 2d 639 (Fla. App., 1975); *Esberger* v. *First Florida Business Consultants, Inc.,* 338 So. 2d 561 (Fla. App., 1976); *Bank of Wessington* v. *Winters Government Sec. Corp.,* 361 So. 2d 757 (Fla. App., 1978); *Escambia Treating Co.* v. *Otto Candies, Inc.,* 405 F. Supp. 1235 (N.D. Fla., 1975); *Citizens State Bank* v. *Winters Government Sec. Corp.,* 361 So. 2d 760 (Fla. App., 1978); *Sausman Diversified Investments, Inc.* v. *Cobbs Co.,* 208 So. 2d 873 (Fla. App., 1968); *James*

v. *Kush,* 157 So. 2d 203 (Fla. App., 1963); *Fawcett Publications, Inc.* v. *Rand,* 144 So. 2d 512 (Fla. App., 1962); *Spencer Boat Co. Inc.* v. *Liutermoza,* 498 F. 2d 332 (5 Cir., 1974). Furthermore, the Florida statute requires more activities or contacts to sustain service of process than are required by the decisions of the United States Supreme Court. *Youngblood* v. *Citrus Associates of New York Cotton Exchange,* 276 So. 2d 505 (Fla. App., 1973).

To reach the trial court's result requires a very liberal construction of the term "business venture" in the Florida statute — one far more comprehensive than the term has ever been given by a Florida court. In *Wm. E. Strasser Construction Corp.* v. *Linn,* 97 So. 2d 458 (1957), the Florida Supreme Court showed by language in its opinion that the facts of this case would not bring it within the Florida concept of business venture. There the Linns, residents of Tokyo, Japan, had, through an attorney-in-fact residing in New York, engaged Strasser to construct a three-unit apartment building on a lot in Miami, Florida owned by the Linns. The court said:

> . . . While at first glance the mere execution of the construction contract might appear in and of itself to be lacking in elements of a business venture, a more mature and thorough consideration of the allegations of the complaint suggest that the Linns had invested in a piece of Florida real estate and, by the agreement, contemplated investing further capital in a purely business enterprise. If the building were completed and the owners then proceeded to collect the rents and enjoy the profits of the Florida operation, we believe it could hardly be contended with success that they were not engaging in a business venture in this State. We think it equally clear that by the purchase of the land and the execution of the construction agreement the Linns were initiating the first substantial steps toward setting themselves up in a business venture in this state. . . .

Of course, in this case, appellants proposed to set up and extend a business venture in Arkansas, not one in Florida, so the mere application for a loan and execution of checks to pay fees in connection with obtaining the loan were lacking

in elements of a business venture, as that term was construed in *Linn* and in cases subsequently mentioned.

Although the Florida Supreme Court held in *State* v. *Register,* 67 So. 2d 619 (1953), that the listing of an orange grove for sale gave a basis for "long-arm" service when considered along with the business venture initiated by the sellers when they acquired the grove, the court said:

> It is Driver's theory that the Webers were engaged in the business of owning and operating a citrus grove and that the listing of the property for sale with Driver was incidental to the operation of the business. Driver here contends that this was sufficient as a basis to obtain substituted personal service on the Webers, as authorized by Section 47.16, supra.

> Although we do not agree that the listing of the grove property for sale was a "transaction or operation connected with or incidental to" the business in which petitioners were engaged in this State, to wit: the maintenance and operation of a citrus grove, we believe that the allegations of the complaint filed by Mr. Driver demonstrate clearly that the purchase of the property and the subsequent listing of the same for sale amounted to engaging in a "business venture" as contemplated by our statute.

These decisions (and some others later cited) were rendered on statutes which were in effect in Florida prior to July 1, 1973, the effective date of Fla. Stat. Ann. § 48-193, but they contain language identical, or virtually so, to § 48.193 (1) (a) quoted above. The Florida Supreme Court·seems to have construed these words in the same way, whatever statute is involved. It seems unlikely that any construction different from that given the identical language in the earlier act would be given the later act. *Escambia Treating Co.* v. *Otto Candies, Inc.,* 405 F. Supp. 1235 (N. D. Fla. 1975). The rule of strict construction still applies to § 48.193. See, *Georgia Savings & Loan Service Corp.* v. *Delwood Estates, Inc.,* 315 So. 237 (Fla. App.·, 1975).

Most of the Florida decisions on the particular question

involved here have been made by District Courts of Appeals; however, the Florida Supreme Court has spoken significantly on it, not only in the cases hereinabove cited and in *DeVaney* v. *Rumsch,* 228 So. 2d 904 (1969), as quoted in *Lyster* v. *Round,* infra, but also in *Dinsmore* v. *Martin Blumenthal Associates, Inc.,* 314 So. 2d 561 (1975). In *Dinsmore,* the validity of service was questioned on two separate sections of the Florida long-arm statute. The service was held invalid under the business venture section, but sustained under another. In that case a Florida corporation brought suit to recover a brokerage commission resulting from an exchange of stock of D. J. Dinsmore Company, a South Dakota Corporation, for stock in Jim Walter Corporation, a Florida corporation. On only one occasion did any of the defendants come to Florida for a meeting with officers of Jim Walter Corporation. The court said:

> In order to determine whether jurisdiction can be acquired over the non-resident defendants pursuant to Fla. Stat. § 48.191 (1), *it is necessary to determine whether the individual or corporate defendant, was carrying on a business or business venture in this State. The activities of the person sought to be served pursuant to Fla. Stat. § 48.181 (i) must be considered collectively and show a general course of business activity in the State for pecuniary benefit. DeVaney v. Rumsch,* ·228 So. 2d 904 (Fla. 1969). A nonresident defendant, which engages the services of brokers, jobbers, wholesalers or distributors, can be doing business in this State pursuant to Fla. Stat. § 48.181 (1) if the nonresident defendant, *through brokers, jobbers, wholesalers or distributors was engaged in a course of conduct in Florida for the purpose of realizing a pecuniary benefit.* Even if the activities of the defendant were not sufficient to constitute a business or business venture pursuant to Fla. Stat. § 48.181 (1), jurisdiction over the person of a defendant can still be acquired under Fla. Stat. § 48.181 (3) if such defendant sells, consigns or leases within this State personal property through brokers, jobbers, wholesalers or distributors. If Fla. Stat. § 48.181 (3) is complied with, even a single sale, consignment or lease raises a conclusive presumption that the defendant is

operating, conducting, engaging in or carrying on a business venture in this State. *Thus, a defendant may be carrying on a business venture pursuant to Fla. Stat. § 48.181 (3), although that defendant is not carrying on a business or business venture pursuant to Fla. Stat. § 48.181 (1).* The method of service under Fla. Stat. § 48.181 (3) is identical to that explained under Fla. Stat. § 48.181 (1).

Turning now to the applicability of Fla. Stat. § 48.181 (1), *the plaintiff failed to show that the defendant was conducting a general course of business activity in this State. The mere giving of a listing to a business brokerage firm which does business in Florida by a nonresident to sell stock in a foreign corporation does not indicate a general course of business activity in this State. See, Hayes* v. *Greenwald,* 149 So. 2d 586 (Fla. 3d DCA 1963). The record does not reflect any acts taken by the plaintiff in this State on behalf of the defendants . . . [Emphasis ours.]

The United States Court of Appeals for the Fifth Circuit has considered the reach of the section of the Florida long-arm statute involved here. That court, in holding in *Uible* v. *Landstreet,* 392 F. 2d 467 (1968), that the statute did not apply, said:

The argument that the execution of a promissory note by Landstreet's group and its delivery in Florida where it was to be performed constitutes a business venture in Florida within the contemplation of section 47.16 Florida Statutes, F.S.A., may be disposed of summarily. The Florida courts have held the contrary, *Odell* v. *Signer,* Fla. App. 1964, 169 So. 2d 851, 853; aff'd, *Signer* v. *Odell,* Fla. 1965, 176 So. 2d 94; and so must we, e.g., *Monarch Ins. Co. of Ohio* v. *Spach,* 5 Cir. 1960, 281 F. 2d 401.

We are also unpersuaded by Uible's contention that Landstreet's trip to Jacksonville, Florida, for the closing of the stock purchase was an important jurisdictional element. *Florida Investment Enterprises, Inc.* v. *Ken-*

*tucky Co., Inc.,* Fla. App. 1964, 160 So. 2d 733, upon which he relies is clearly distinguishable. In that case the nonresident defendant executed a lease on a motel in Florida and "by this instrument committed herself to the accomplishment of many affirmative acts which amounted to operating, conducting, engaging, or carrying on a business or a business venture in this state. Furthermore, it is clearly evident from the record that the instant motel business would not be in existence had not Mrs. Hayes executed the lease." Id. at 740. Landstreet's group made no such commitments.

The court then considered whether other activities of Landstreet and his group were sufficient additional circumstances to render the service made under the statute valid. The court added:

> . . . Put succinctly, this simply adds up to the purchase of stock in a Florida corporation by a group of nonresidents, attendance by one of them at a stockholders' meeting, and inquiry about the financial affairs of the corporation. No Florida court has held, or would hold we think, that such investment activities are within the scope of section 47.16. F.S.A., Cf., *Unterman* v. *Brown,* Fla. App. 1964, 169 So. 2d 522.

In *Spencer Boat Co., Inc.* v. *Liutermoza,* 498 F. 2d 332 (5 Cir., 1974), the same court evaluated the Florida decisions on the questions, saying:

> Defendants' activities in Florida do not fit the literal terms of the statute. To do business or conclude a business transaction is not "to operate, conduct, engage in, or carry on a business or business venture in the state," and the statute must be construed strictly, not broadly. See *Lyster* v. *Round,* 276 So. 2d 186, 188 (Fla. App. 1973) (Citing *DeVaney* v. *Rumsch,* 228 So. 2d 904 (Fla. 1969) ); *Young Spring & Wire Corp.* v. *Smith, 176 So. 2d 903 (Fla. 1965). . . .*

*The case of Lyster* v. *Round,* 276 So. 2d 186 (Fla. App., 1973), involved a check given by a non-resident for the down

payment on a house. The non-resident had stopped payment on the check. The First District Court of Appeals after holding that an isolated transaction involving the sale or purchase of a home did not amount to a business venture under the long-arm statutes, stated:

> In *DeVaney* v. *Rumsch* [228 So. 2d 904, 907] the Supreme Court, speaking through Justice Boyd, propounded the legislative intent in the enactment of the long-arm statute here considered to be: ". . . [T]hat any individual or corporation who has exercised the privilege of practicing a profession or otherwise dealing in goods, services, or property, whether in a professional or non-professional capacity, within the State in anticipation of economic gain, be regarded as operating a business or business venture for the purpose of service under Florida Statute § 48-181, F.S.A., in suits resulting from their activity within the State. As indicated in *Matthews* [*Matthews* v. *Matthews*, Fla. App., 122 So. 2d 571] the activities of the person sought to be served must be considered 'collectively' and show a general course of employment and conduct of carrying on business activity in the State for pecuniary benefit."

\* \* \* \* \*

Appellees advance the argument that this court should take judicial notice of the expanding economy in Florida and the constantly rising values of real estate in the rapidly growing resort areas of our state. They urge that we proceed from this premise to the assumption that anyone who buys real estate in Florida at this is speculating on the possibility of realizing a profit from his investment even though the purpose of the purchase may be for a home as distinguished from business or developmental property. Although this may have been good argument in the trial court had any evidence been adduced to support such postulates, we do not consider that it can be accepted as a substitute for the clear and convincing proof required under the decisions hereinabove cited in order to demonstrate the applicability of the statute.

In a Florida case somewhat like the one before us, *Odell v. Signer,* 169 So. 2d 851 (Fla. App. 1964), it was held that "the signing of a note and the defense of a law suit are not sufficient acts, in and of themselves, to constitute carrying on or engaging in a business or business venture." The court held, however, that the additional circumstances did bring the defendants, officers of a corporation doing business in Florida, within the purview of the Florida statute. The court said that the signing of the note would not be considered in a vacuum, but that the circumstances surrounding its signing must be considered. The reasons for holding that the trial court had jurisdiction over the individual defendants were: (1) the note was signed in order to end litigation which arose from business activities in Florida by the defendant corporation and individual defendants who had served as agents of the corporation in conducting those activities; and (2) the activities of the corporation, which was doing business in Florida, were chargeable to the individual defendants because, as agents of the corporation, they would be personally liable to any third person injured by their tortious activity, so the acts of the corporation which constituted doing business in the state were attributable to these individuals for the purpose of determining jurisdiction.

In *Hyco Mfg. Co. Rotex Intern. Corp.,* 355 So. 2d 471 (Fla. App., 1978), the Third District Court of Appeals used this pertinent language:

> It has been consistently held that an isolated act will not subject a foreign corporation or a non-resident to the jurisdiction of a Florida court. In the case of *Lyster* v. *Round,* 276 So. 2d 186 (Fla. 1st DCA 1973), the court held that an isolated act which, from any objective viewpoint, could not be held to constitute the operation, conduct, engagement in or carrying on a business or business venture, is not sufficient to activate the provisions of Section 48.181, Florida Statutes (1975).

This case is in no wise similar to *Horace* v. *American National Bank & Trust Co.,* 251 So. 2d 33 (Fla. App. 1971) or to *Dublin Co.* v. *Peninsular Supply Co.,* 309 So. 2d 207

(Fla. App., 1975). In *Horace,* a non-resident of Florida contended that his signing of a guaranty agreement in Florida was not sufficient to constitute carrying on or engaging in a business venture in Florida within the meaning of Fla. Stat. Ann. § 48.181. (This statute contains language identical to that in § 48.193). The evidence showed that prior to January 31, 1969, Travel Coach Inc., a Florida corporation doing business in Florida, had a line of credit with American National Bank guaranteed by three individuals. On January 31, 1969, appellant Horace and two other individuals appeared at the bank and substituted their signatures on a guaranty agreement for Travel Coach. Horace and the two others, after informing the bank that they had acquired a 60% interest in Travel Coach, opened a commercial checking account for Travel Coach by executing signature cards. Service upon Horace was held valid. The court held that the acts of Horace, whether considered alone, or coupled with the activities of Travel Coach, created the minimal contacts necessary to meet federal constitutional due process requirements; however, in deciding the question whether the individual defendant in that case was engaged in a business or business venture, the court found that the acts of Horace were such that he came within the purview of the earlier holding in *Odell* v. *Signer,* 169 So. 2d 851 (Fla. App., 1964), but did not hold that the signing of the guaranty alone was sufficient basis for application of the Florida long-arm statute. The Florida court said:

> When we consider the circumstances surrounding the execution of the guaranty in the case sub judice we likewise find something more than just a mere signing of the guaranty. The rationale of *Odell* is applicable to the case sub judice so that the acts of Travel Coach can be imputed to Horace for the *purpose of determining the existence of jurisdiction.* [Emphasis ours.]

The court then said:

> Apart from *Odell* it is our view that the *individual* acts of the defendant in and of themselves irrespective of the activities of Travel Coach established the requisite minimum contacts so as to permit the maintenance of the suit below.

The latter quotation relates to federal due process requirements only.

In *Dublin,* the court held that a concern that had sold its products to three Florida distributors for at least five years, grossing at least $13,000 per year therefrom, was ''doing business'' in Florida and said this about *Horace:*

> * * * Although one act alone within the state viewed in light of surrounding circumstances, can cause jurisdiction to attach, *Horace* v. *American National Bank & Trust Co. of Ft. Lauderdale,* 251 So. 2d 33 (4th D.C.A. Fla. 1971), the affidavit states there were several acts here. * * *

It is quite significant that the ''one act alone'' must be ''viewed in the light of surrounding circumstances.''

We do not see how, in the light of the above holdings, the mere signing of the application and the checks involved here could possibly be held to constitute a business venture.

The judgment is reversed and the cause dismissed.

HARRIS, C.J., not participating.

BYRD and HOLT, JJ., dissent.

Supplemental opinion on denial of rehearing
delivered February 11, 1980

PER CURIAM. Appellee has filed a petition for rehearing advancing an argument and relying upon a subsection of the Florida statute that was never mentioned in its

original brief. That statute is Fla. Stat. Ann. § 48.193 (1) (g) (Supp. 1979), which appellee incorrectly cites in its petition for rehearing as § 48.193 . . . (3) (g). That subsection provides for "long-arm" jurisdiction of actions for breach of contract in the state of Florida by failing to perform acts required by the contract to be performed in that state. Appellee then cites *Madax International Corp.* v. *Delcher Intercontinental Moving Services, Inc.,* 342 So. 2d 1082 (Fla. App., 1977) and *Professional Patient Transportation, Inc.* v. *Fink,* 365 So. 2d 209 (Fla. App., 1978). The first case involved the non-resident defendant's failure to pay for services rendered by a Florida corporation when there was an express promise to pay, and the breach consisted of the debtor's failure to seek the creditor in Florida and make payment, no place of payment having been specified. The latter case simply reversed a judgment quashing long-arm service because the complaint had alleged that the non-resident defendants had breached their agreement to make payment in Florida for services rendered to them by the Florida plaintiff outside Florida. The appellate court held that these facts constituted a breach which amounted to the failure to perform acts required by the contract to be performed in Florida under Fla. Stat. Ann. § 48.193 (1) (g), citing the first case relied upon by appellee here in his petition for rehearing.

The application of the subsection of the statute now relied upon by appellee and of the authorities cited is doubtful, to say the least. In the first place, it does not seem that the "place of payment" was Florida. The checks were drawn on Morrilton Security Bank and the checks bore its address, i.e., Morrilton, Arkansas, so that bank was the payor bank. Sec. 85-4-105 (b) (Add. 1961). The drawer was Rollins Nursing Homes, Inc., whose address was shown on the check as P.O. Box 27, Cabot, Arkansas, 72023. It appears that the place of payment of these checks would have been Morrilton, Arkansas, the address of the payor bank. *See* Brady on Bank Checks (5th Ed.) 27-7, § 27-4. Thus it is not at all clear that the cases now cited by appellee would have any application at all.

In the next place, appellee's Florida judgment was based

upon a complaint seeking *damages* for non-payment of three checks "in connection with a business venture in which Defendants were engaged in Broward County Florida, to-wit: contracting with Plaintiff for the furnishing to Defendants of certain financing for property owned by Defendant, Rollins Nursing Home, Inc. and located without the State of Florida." There was no allegation of breach of contract in the complaint. Thus, jurisdiction of the Florida court was based upon § 48.193 (1) (a) and not § 48.193 (1) (g).

Sec. 48.193 (1) (g) was never invoked in the pleadings in the Florida court in which the judgment was rendered. This "breach of contract" section was barely mentioned in the Arkansas trial court and seems to have been abandoned when appellants' attorney pointed out to the trial judge that no breach of contract was alleged in the Florida complaint. The point appellees now raise, if it has any merit, has undoubtedly been waived.

Rule 20 (g) of the Rules of the Supreme Court and Court of Appeals provides that the petition for rehearing should be used to call attention to specific errors of law or fact which the court's opinion is thought to contain and that counsel are expected to argue the case fully in their original briefs. Petitioner is in no position to ask a rehearing under Rule 20.

The petition for rehearing is denied.